UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY RAE MALDONADO, | 1:11-cv-01735-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS THIS CASE FOR FAILURE TO STATE A CLAIM |
| vs. | (Doc. 16.) |
| JAMES YATES, et al., | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |
| Defendants. | |

## I.       BACKGROUND

Billy Rae Maldonado ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. §1983.  Plaintiff filed the Complaint commencing this action on October 18, 2011.  (Doc. 1.)  On November 2, 2011, the Court issued an order striking the Complaint for lack of Plaintiff's signature, with leave to amend. (Doc. 9.)  On November 10, 2011, Plaintiff filed the First Amended Complaint.  (Doc. 12.)  On September 20, 2012, the Court dismissed the First Amended Complaint for failure to state a claim, with leave to amend.  (Doc. 13.)  On November 9, 2012, Plaintiff filed the Second Amended Complaint, which is now before the Court for screening.  (Doc. 16.)

///

///

1

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.    SUMMARY OF SECOND AMENDED COMPLAINT

The events at issue in the Second Amended Complaint occurred at Pleasant Valley State Prison (PVSP) in Coalinga, California, where Plaintiff is presently incarcerated.   Plaintiff names the following individual defendants:  Dr. Coleman, C. Roberts (RN), Dr. Flemming, Dr. Vilaysane, Dr. Chokatos, Dr. Amenaval, Dr. Taherpour, Dr. Barry J. Green, Dr. Randolph Wilson III, Dr. J. Singh, Dr. Evans, and Dr. Junior Fortune.  Plaintiff's factual allegations follow.

///

When Plaintiff arrived at PVSP, the RN did not check Plaintiff's medical records or ask him about his health conditions and mental disability.  C. Roberts (RN) fabricated a statement that Plaintiff was fit for full duty food handling.

Plaintiff has a medical condition affecting his lower back and spine which causes excruciating pain and suffering.  Plaintiff is unable to work due to injuries to his shoulders, knees, ankles, left wrist, left tibia, deteriorating disc, inflammation, poor circulation, and numbness.  He is unable to bend and walk because of a right hip injury from October 2003. Plaintiff has had accidents since the age of 2 1/2 when he fell out the window of a two story building.  At age 14, Plaintiff fell sixty feet from a tree, suffering serious injuries.  In 1984, Plaintiff fell twenty seven feet from a cliff while putting out a brush fire and took twenty-two months to heal.  Hot and cold weather affect Plaintiff's injuries.

On July 22, 2010, Plaintiff filed a request for accommodation under the American Act Disability (*sic*).  Plaintiff was refused a lower tier bunk by medical staff pursuant to a policy implemented by the medical examiner.

On February 2, 2007, Plaintiff was scheduled to be examined by Dr. Coleman "for shoulders lumbar lower back spine knees ankles." 2ACP, Doc. 16 at 4:7-8.  Dr. Coleman did not give Plaintiff any medication for his excruciating pain and suffering.

On February 19, 2007, Plaintiff was scheduled to be examined by Dr. Flemming. Plaintiff was supposed to get steroid shots for his chronic health condition.  Dr. Flemming changed his mind and gave Plaintiff morphine instead.  Plaintiff said he did not want morphine. Dr. Flemming denied Plaintiff medication for excruciating pain and suffering.

On October 3, 2007, Plaintiff was scheduled to be examined by Dr. Vilaysane.  He denied Plaintiff medication for excruciating pain and suffering.

On December 13, 2009, Plaintiff was scheduled to be examined by Dr. Chokatos.  He denied Plaintiff medication for excruciating pain and suffering.

On July 24, 2010, Plaintiff was scheduled to be examined by Dr. Amenaval.  He denied Plaintiff medication for excruciating pain and suffering.

///

On August 19, 2010, Plaintiff was scheduled to be examined by Dr. Taherpour. He denied Plaintiff medication for excruciating pain and suffering.

On September 17, 2010, Plaintiff was scheduled to be examined by Dr. Barry J. Green. He denied Plaintiff steroid shots and medication for excruciating pain and suffering.

On November 5, 2010, Plaintiff was scheduled to be examined by Dr. Randolph Wilson III. He denied Plaintiff medication for excruciating pain and suffering.

On December 22, 2010, Plaintiff was scheduled to be examined by Dr. J. Singh. He denied Plaintiff medication for excruciating pain and suffering.

On August 25, 2011, Plaintiff was scheduled to be examined by Dr. Junior Fortune. He denied Plaintiff steroid shots because of the presence of Valley Fever in the area of PVSP.

On May 25, 2007, Dr. James Carter administered an MRI exam of Plaintiff's shoulders and lower back and found degenerative disc disease.

Plaintiff requests monetary damages.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts,

or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actors knows or reasonably should know would cause others to inflict the constitutional injury." Johnson at 743-44).

A.      **Eighth Amendment Medical Claim**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but

that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that defendant C. Roberts (RN) fabricated a statement that Plaintiff was capable of working as a food handler, without interviewing Plaintiff about his medical condition or reviewing his medical files. Plaintiff also alleges that he was scheduled to meet, in turn, with eleven different doctors, and each one of them denied him medication and steroid shots for excruciating pain and suffering. However, Plaintiff has alleged no facts showing that any of the doctors, or the RN, knew of his serious medical need and deliberately acted in disregard of a substantial risk of harm to Plaintiff. Further, it is not plausible that Plaintiff presented to eleven different doctors on different dates, demonstrating he was suffering from excruciating pain, and that every one of the doctors , while knowing of a substantial risk of serious harm to Plaintiff, denied him care. Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. Therefore, Plaintiff fails to state a claim for inadequate medical care against any of the Defendants.

///

**B.**     **ADA Claim**

It appears that Plaintiff seeks to bring a claim under the Americans with Disabilities Act (ADA).  "Title II of the ADA ... prohibit[s] discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA ... appl[ies] to inmates within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  Lovell, 303 F.3d at 1052.  "'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'"  Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)).  "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  Roundtree, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)).  Public entity, "'as it is defined within the statute, does not include individuals.'"  Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Plaintiff claims that his request for a lower bunk accommodation was denied by medical staff pursuant to a policy implemented by the medical examiner.  Individual liability is precluded under Title II of the ADA.  Any claim Plaintiff might intend to make under the ADA against Defendants, all who are individuals, is not cognizable.

///

Further, the treatment or lack of medical treatment for Plaintiff's condition does not provide a basis upon which to impose liability.  Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

Plaintiff alleges no facts to show that any Defendant participated in, or was otherwise responsible for, excluding him from numerous activities, programs, and benefits otherwise available to him, because he was disabled.  Therefore, Plaintiff fails to state a cognizable claim for violation of his rights under Title II of the ADA.

## V.      CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's Second Amended Complaint fails to state any claims upon which relief can be granted under § 1983 or the ADA against any of the Defendants.  In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court.   Plaintiff has now filed three complaints without alleging facts against any of the Defendants which state a claim under § 1983 or the ADA.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that:

1.       Pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be DISMISSED with prejudice for failure to state a claim upon which relief may be granted under § 1983; and

2.       This dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g).  Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may

file written objections with the court.   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **May 6, 2013**                  **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE